**No. 16-30992**

*In The*

# United States Court of Appeals

*for the*

# Fifth Circuit

ERYON LUKE,

*Plaintiff-Appellant,*

v.

CPLACE FOREST PARK SNF, L.L.C.,
doing business as Nottingham Regional Rehab Center,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the Middle District of Louisiana, Baton Rouge, The Honorable Brian Anthony Jackson, Chief Judge*
*USDC No. 3:13-CV-402*

## BRIEF PLAINTIFF-APPELLANT

VICTOR JOSEPH WOODS, JR., ESQ.
ELIZABETH LEBLANC, ESQ.
DICKERSON, LEBLANC & WOODS
3834 New Prosperity Lane, Suite A
Addis, Louisiana 70710
(225) 749-8696
Email: victor@woodslawoffice.com
bleblanc@dlwlegal.com

*Attorneys for Plaintiff-Appellant*
*Eryon Luke*

COUNSEL PRESS • (888) 700-3226

## CERTIFICATE OF INTERESTED PERSONS

(1) No. 16-30992 Eryon Luke v. CPlace Forest Park SNF, L.L.C. USDC No. 3:13-CV-402

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Theses representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Eryon Luke
Appellant

Victor J. Woods
THE LAW OFFICES OF DICKERSON, LEBLANC & WOODS
3834 New Prosperity Lane, Suite A
Addis, LA 70710
Attorney for Appellant/Plaintiff

Elizabeth LeBlanc
THE LAW OFFICES OF DICKERSON, LEBLANC & WOODS
3834 New Prosperity Lane, Suite A
Addis, LA 70710
Attorney for Appellant/Plaintiff

CPlace Forest Park SNF, L.L.C.
Defendant

Christine S. Goldberg
The Kullman Firm
4605 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana 70809
Attorney for Appellee/Defendant

Respectfully submitted,

/s/ VICTOR J. WOODS
VICTOR J. WOODS
State Bar No. 21955

/s/ ELIZABETH LEBLANC
ELIZABETH LEBLANC
State Bar No. 32801

THE LAW OFFICES OF
DICKERSON, LEBLANC & WOODS
3834 New Prosperity Lane, Suite A
Addis, LA 70710
Attorney for Appellant/Plaintiff
E-mail: victor@woodslawoffice.com
ATTORNEY OF RECORD
FOR PLAINTIFF-APPELLANT
ERYON LUKE

## STATEMENT CONCERNING ORAL ARGUMENT

Appellant respectfully requests oral argument. This case concerns the application of a recent decision of the United State Supreme Court, *Young v. United Parcel Service*, *Inc*., 135 S. Ct. 1338 (2015), which few federal Courts of Appeal have considered. *Young* established a new *prima facie* case for claims alleging a failure to accommodate pregnant employees, which the appellant asserts the district judge has misapplied. In addition, appellant contends that with respect to numerous material factual issues, the district court impermissibly weighed the evidence when deciding the motions for summary judgment and failed to take the evidence in the light most favorable to the nonmoving party. Finally, appellant avers that the district court erroneously ruled that an employer need not discuss potential accommodations with an employee who has requested accommodation. Given the complexity of the legal and factual issues presented, appellant submits that the decisional process would be assisted by oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT CONCERNING ORAL ARGUMENT ........................................ iii

TABLE OF CONTENTS ........................................................................................ iv

TABLE OF AUTHORITIES ................................................................................... vi

STATEMENT OF JURISDICTION ........................................................................ 1

STATEMENT OF ISSUES PRESENTED ............................................................... 2

STATEMENT OF THE CASE ................................................................................. 2

SUMMARY OF THE ARGUMENT ....................................................................... 8

ARGUMENT ........................................................................................................ 11

Standard of Review ........................................................................................ 11

I. The district court erred by construing too narrowly the elements of the *prima facie* case established by *Young v. United Parcel Service, Inc*. ..................................................... 11

II. The district court erroneously ignored Luke's evidence, accepted appellee's evidence as true, and drew inferences in appellee's favor when finding that Luke did not establish a *prima facie* case ........................................................................ 14

A. The District Court Ignored or Rejected Luke's Ample Evidence That Appellee Accommodated Others Who Were Similar In Their Ability To Work ................................. 15

B. The District Court Erroneously Accepted As True Appellee's Evidence Regarding Lifting Requirements

for CNAs and Rejected Appellant's Evidence that Assistance with Lifting Was Available .....25

C. The District Court Erroneously Rejected Luke's Evidence that She Sought Various Accommodations .....27

D. The District Court Erred In Accepting As True Appellee's Claim that No Light Duty Positions Were Available Because It Had Earlier Ruled That Luke Raised a Genuine Issue Of Material Fact With Respect to the Claim .....29

III. The district court erred in ruling that an employer need not discuss with an employee potential accommodations that in response to a request for accommodation .....30

PRAYER .....32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Burton v. Freescale Semiconductor, Inc.*,
798 F.3d 222 (5th Cir. 2015) ........................................................................15

*Calabro v. Westchester BMW, Inc.*,
398 F. Supp. 2d 281 (S.D.N.Y. 2005) ..........................................................24

*Chambers v. Sears Roebuck & Co.*,
428 F. App'x 400 (5th Cir. 2011) ..................................................................15

*Deneen v. Northwest Airlines, Inc.*,
132 F.3d 431 (8th Cir. 1987) ...................................................................20, 21

*EEOC v. Chevron Phillips Chem. Co., LP*,
570 F.3d 606 (5th Cir. 2009) ........................................................................31

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)........................................................................................31

*Haire v. Board of Supervisors of Louisiana State University*,
719 F.3d 356 (5th Cir. 2013) ........................................................................11

*Heinsohn v. Carabin & Shaw, P.C.*,
832 F.3d 224 (5th Cir. 2016) ........................................................9, 11, 14, 15

*Hunter v. Mobis Ala., LLC*,
559 F. Supp. 2d 1247 (M.D. Ala. 2008).......................................................24

*Legg v. Ulster County*,
820 F.3d 68 (2d Cir. 2016) ...........................................................................16

*Martin v. Canon Bus. Solutions, Inc.*,
2013 U.S. Dist. LEXIS 129008 (D. Colo. 2013)..........................................23

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..................................................................................11, 12

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014).................................................................................9, 14

*Wilson v. O'Grady-Peyton Int'l (USA), Inc.*,
2008 U.S. Dist. LEXIS 24394 (S.D. Ga. 2008) ...........................................24

*Young v. United Parcel Service, Inc.*,
135 S. Ct. 1338 (2015)....................................................................*passim*

**Statutes & Other Authorities:**

28 U.S.C. § 1291....................................................................................1

28 U.S.C. § 1331....................................................................................1

28 U.S.C. § 1367....................................................................................1

29 U.S.C. § 2601....................................................................................1

42 U.S.C. § 2000e-5................................................................................1

42 U.S.C. § 2000e-k...........................................................................*passim*

41 C.F.R. § 60-20.5(c)(ii) .....................................................................16

Fed. R. Civ. P. 56(a)..............................................................................11

La. R.S. § 23:342 ..............................................................................1, 2

## STATEMENT OF JURISDICTION

This action was initiated pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*., and the Louisiana Employment Discrimination Law, La. R.S. § 23:342. Appellant filed the action in state court and appellee removed it to federal court. The district court had jurisdiction over the Title VII and FMLA claims pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367. On November 4, 2014, the district court entered summary judgment in favor of appellee on all federal claims and one of the state claims, and remanded the remaining state claim to state court. ROA. 32. The judgment was appealed as to the federal claims, and on June 22, 2015, this Court reversed the judgment as to the Title VII claim and remanded. *Luke v. CPlace Forest Park SNF, LLC*, case no. 14-31347 (5th Cir.). On remand, on August 9, 2016, the district court entered a final judgment disposing of plaintiff's Title VII claim. ROA. 87. On September 2, 2016, the appellant filed a timely notice of appeal. ROA. 88. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

I. Whether the district court erred in its application of the *prima facie* case requirements set forth in *Young v. United Parcel Service, Inc.* by improperly narrowing the scope of a plaintiff's showing?

II. Whether the district court erred in granting summary judgment after engaging in fact finding and drawing inferences in favor of the moving party?

III. Whether the district court erred in ruling that an employer does not need to discuss with an employee potential accommodations in response to her request for accommodation?

## STATEMENT OF THE CASE

On May 15, 2013, Eryon Luke filed this action in state court, alleging, *inter alia*, that her former employer discriminated against her on the basis of her pregnancy in violation of the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e-k, when it refused to accommodate her lifting restriction and terminated her employment, and that it violated the Louisiana Employment Discrimination Law (LEDL), La. R.S. § 23:342 when it failed to allow her to take leave to which she was entitled and to transfer her to accommodate her pregnancy. ROA. 1-2. The appellee, CPlace Forest Park SNF, LLC, doing business as Nottingham Regional

Rehab Center, removed the action to the United States District Court for the Middle District of Louisiana on June 20, 2013. ROA. 1.

On November 4, 2014, the district court granted summary judgment to the appellee on the PDA claim and one of the LEDL claims, and remanded the remaining LEDL claim to state court. ROA. 32. Luke appealed, and while her appeal was pending, the United States Supreme Court issued a decision in *Young v. United Parcel Service*, *Inc*., 135 S. Ct. 1338 (2015). This Court vacated the district court's ruling with respect to the PDA claim and remanded the case for consideration in light of *Young*. ROA. 37.

On remand, additional discovery was taken and both parties moved for summary judgment. ROA. 42, 44. Luke argued that she had presented evidence that she was pregnant, had sought accommodation, the employer refused to accommodate her, and the employer accommodated others who were similar in their ability to work in satisfaction of the new *prima facie* case established by *Young* for claims alleging failure to accommodate a pregnant employee. ROA. 44. She also argued that her evidence was sufficient to show that the employer's proffered reason for non-accommodation was pretext for discrimination as required by *Young*. Luke offered evidence that she could have performed her job with lifting assistance that the employer made available to all employees, including to Luke herself prior to her pregnancy. Further, a reasonable factfinder could

conclude that the evidence showed that the employer impermissibly assumed that Luke had a "problem pregnancy" and, based on that assumption, denied her accommodations that were provided both to other pregnant employees who did not have complications and to nonpregnant employees. *Id*.

The employer argued in its motion that Luke had not shown that others were accommodated, it did not provide employees with light duty at the time that Luke requested light duty, and no light duty positions were available. ROA. 42. *Id*. Each motion was opposed by the other party, presenting arguments similar to the arguments made in their motions. ROA. 48, 60.

After hearing oral argument on March 29, 2016, allowing additional discovery, and receiving supplemental memoranda from the parties, ROA. 83, 84, on August 9, 2016, the district court granted the defendant's motion for summary judgment and denied as moot Luke's motion for summary judgment. ROA. 87. On September 2, 2016, Luke timely filed this appeal of the district court's final judgment. ROA. 88.

STATEMENT OF FACTS

Plaintiff/appellant Eryon Luke (Luke or appellant) was employed by CPlace Forest Park SNF, LLC, doing business as Nottingham Regional Rehab Center (defendant or appellee), as a full-time certified nursing assistant (CNA) from October 10, 2011 through May 24, 2012. ROA. 44. She learned she was pregnant

with twins and soon thereafter, on December 3, 2011, provided her supervisor with a certificate from her doctor stating that she could work with the restriction that she not lift heavy objects for two weeks. *Id*. On December 3 and 4, 2011, the supervisor allowed Luke to perform duties that did not require heavy lifting. ROA. 42-8.

CNAs employed by appellee were not required to be able to lift a certain amount. There was no job description stating a lifting requirement, and CNAs performed many duties that did not require lifting. ROA. 44-2, p.10. All employees were required by the appellee's written policies to get assistance lifting "heavy loads" and were instructed to "[n]ever lift a resident without assistance." ROA. 44-3, §§ 8.2D, §8.3E. Prior to becoming pregnant, Luke always received assistance with lifting from other employees. ROA. 44-2, p.15. Mechanical lifts and other assistive devices were also available. ROA. 60-2, p.39.

Appellee had a policy of providing reasonable accommodations to employees who had disabilities, ROA. 44-3, §3.2 ("It is the policy of the company to comply with all relevant and applicable provision [sic] of the Americans with Disabilities Act. …The Company shall strive to make reasonable accommodations for employees when provided proper notice, preferably in writing."). In addition, appellee modified duties to accommodate some CNAs and had light duty positions that it made available to CNAs. ROA. 45, pp.23, 24, 27; ROA. 84, p.3; ROA. 86-5,

p.20. Appellee also had the ability to transfer CNAs to positions that did not require lifting within the Nottingham facility or at six or seven sister facilities. ROA. 44-3, p.10; ROA. 43-7, pp.5, 10; ROA. 60-5, p.8; ROA. 60-6, p.46.

On December 5, 2011, after Luke had worked for two days with modified duties that did not require heavy lifting, appellee's human resources manager, Rachel Carcamo, informed Luke that despite her medical release, and despite her supervisor's agreement that she could continue working without performing heavy lifting, she was being placed on forced leave for two weeks because of her lifting restriction as appellee did not have any light duty "at that time." ROA. 42-4, p.2.

Donna Duplantis, the Regional Director of Human Resources for Traditions Senior Management (Traditions has a contract to manage appellee), said appellee assumed that Luke had a "problem pregnancy." ROA. 44-2, p.6 ("A. Because she had such strict lifting restrictions in the beginning of her pregnancy, we decided to assume it was a problem pregnancy. We did not ask her physical [sic] to verify that.").

Luke returned to work on December 12, 2011, with another certificate from her doctor clearing her to work without restrictions. ROA. 44-1, p.2. Almost six weeks later, on January 22, 2012, Luke gave the appellee another note from her doctor that stated "no heavy lifting throughout pregnancy" and Luke was again placed on involuntary leave because, she was told, she could not work with a

lifting restriction. ROA. 42-4, p.4. A doctor's note provided four days later clarified that the lifting restriction was only for objects heavier than 30 pounds, and Luke could otherwise continue to work. *Id*. Appellee nevertheless placed her on leave, despite receiving a letter from Luke's doctor stating that there was no medical reason for her to be on leave and that she could work normal hours, as long as she did not lift more than 30 pounds. *Id*. As she was filling out paperwork related to her leave, Luke asked Carcamo if there was any other work she could do, but Carcamo said no. ROA. 60-6, pp.44-45. On February 16, 2012, Luke also wrote a letter to appellee, requesting that she be allowed to return as she felt there was sufficient light duty available for her and asking that her supervisors be allowed "to make reasonable adjustments to the type of work I am able to perform." ROA. 42-4, p.33.

Appellee's refusal to accommodate Luke with lifting assistance, modification of duties, a designated light duty position, or a transfer was a departure from its treatment of other CNAs. CNAs who needed accommodation in the past had been allowed to work light duty, ROA. 60-5, pp.10 & 11; ROA. 86-5, p. 20, and, in addition to directing other CNAs – including Luke herself when she was not pregnant – to have assistance when lifting, appellee provided modified duties to two CNAs who had uncomplicated pregnancies. ROA. 86-2, pp.2, 4.

CNAs were also transferred to positions such as ward clerk, medical records, and activities assistants. ROA. 60-6, p.50.

Carcamo provided Luke with a letter stating that her leave expired on May 23, 2012, and she would be terminated effective May 24, 2012. ROA. 42-4, p.35. Appellee stated that she was terminated because "there was still no work available within Luke's restrictions." ROA. 42-8, p.6. Luke gave birth to twins on June 21, 2012. ROA. 1-2, p.3.

## SUMMARY OF THE ARGUMENT

In granting the appellee's motion for summary judgment, the district court recited the new *prima facie* standard set forth in *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015), which provides that a plaintiff may establish a *prima facie* case of pregnancy discrimination based on a claim of failure to provide pregnancy-related accommodations by showing: (1) the plaintiff was pregnant, (2) she sought an accommodation, (3) the employer did not accommodate her, and (4) the employer accommodated others who were similar in their ability or inability to work. In applying the standard, however, the district court impermissibly narrowed the fourth element. It adopted appellee's argument that appellant had sought only a "light duty" position and therefore could prove her case only if she showed that the employer had accommodated other employees with "light duty" positions. Finding, in disregard of appellant's evidence, that appellant had not made such a showing,

the court granted summary judgment to appellee. Appellant submits that the district court's impermissible narrowing of the fourth element of the *prima facie* case converted her non-onerous burden of preliminarily creating an inference of discrimination into a far higher hurdle than intended by the Supreme Court in *Young*, resulting in dismissal of her claim.

The district court also erred by disregarding the summary judgment standard when it accepted as true the evidence offered by appellee (the moving party) and rejected or ignored appellant's evidence without drawing all reasonable inferences in appellant's favor. Appellant provided ample evidence from which a reasonable jury could conclude that appellee accommodated others who were similar in their ability to work, but the district court disregarded it in ruling that she had failed to make a *prima facie* showing of discrimination. The district court similarly rejected appellant's evidence regarding accommodations that could have been provided to permit her to continue to work. Appellant submits that, in deciding to accept as true appellee's evidence and reject appellant's evidence, the district court violated the dictates of the Supreme Court in *Tolan v. Cotton*, 134 S. Ct. 1861 (2014) and of this Court in *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016) that courts not weigh evidence at the summary judgment stage.

Summary judgment was also error because the district court had previously denied summary judgment to appellee on appellant's claim under state law that

appellee had refused to transfer her to a less strenuous position, finding that appellant had raised a genuine issue of material fact as to whether other positions were available to which she could have been transferred. In the ruling now under review, however, addressing the same issue of the availability of positions to which appellant could have been transferred, the district court accepted the same evidence as true and undisputed.

Finally, appellant contends that the district court erred in finding that appellee did not violate the Pregnancy Discrimination Act by denying appellant's request for an accommodation without discussing with her other potential accommodations that could have permitted her to continue to work. The district court ruled that appellant had sought only "light duty," and because appellee claimed that no "light duty" positions were available, appellant could not succeed on her claim. The district court cited no authority for not requiring a discussion of appellant's needs and available options that would have met those needs. This ruling would eviscerate the *Young* requirement that employers accommodate pregnant employees if they accommodate others, and encourage gamesmanship by employers.

## ARGUMENT

Standard of Review

The court of appeals reviews a grant of summary judgment *de novo*. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016). Summary judgment is proper only when the moving party demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a).* In resolving the motion, the court considers all the evidence in the record, but does not make credibility determinations or weigh the evidence. *Haire v. Board of Supervisors of Louisiana State University*, 719 F.3d 356, 362 (5th Cir. 2013). Rather, the court views the evidence in the light most favorable to the party opposing the motion, and draws all reasonable inferences in that party's favor.

### I. The district court erred by construing too narrowly the elements of the *prima facie* case established by *Young v. United Parcel Service, Inc.*

The second clause of the Pregnancy Discrimination Act (PDA), provides that pregnant employees shall be treated the same as others who are not pregnant but are "similar in their ability or inability to work." 42 U.S.C. § 2000e(k). In *Young v. United Parcel Service, Inc.*, the Supreme Court held that the traditional *McDonnell Douglas* burden-shifting analysis should be utilized for claims alleging disparate treatment in violation of this clause, but established a new *prima facie*

case: (1) the plaintiff was pregnant, (2) she sought an accommodation, (3) the employer did not accommodate her, and (4) the employer accommodated others who were similar in their ability or inability to work. *Young v. United Parcel Service, Inc*., 135 S. Ct. 1338, 1354 (2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The *Young* Court emphasized the familiar rule that the burden of making a *prima facie* case is neither "onerous" nor "burdensome." *Id*.

In the case now before the Court, there is no dispute that Luke presented evidence of the first three elements of the *prima facie* case. ROA. 87, p. 6. The district court's ruling that Luke had failed to make out a *prima facie* case under the *Young* standard, and that the appellee was therefore entitled to summary judgment, rested solely on its determination that she failed to establish the fourth *Young* element. The district court improperly interpreted the fourth element as requiring Luke to present evidence that "light duty" was an accommodation the appellee had given to other employees. *Id*. This ruling construed the fourth element too narrowly.

The *Young* Court described the fourth element of the new *prima facie* case for failure to accommodate pregnancy claims as "the employer did accommodate others 'similar in their ability or inability to work.'" *Young v. United Parcel Service, Inc*., 135 S. Ct. at 1354 (quoting 42 U.S.C. § 2000e(k)). That formulation

instructs plaintiffs to produce evidence of the employer's policies and practices with respect to accommodating its employees, but it does not require plaintiffs to demonstrate that the *accommodations* provided to pregnant employees and others are identical. Requiring demonstration of identical accommodation would create a high threshold hurdle for plaintiffs that would undermine the purpose of the *Young prima facie* case, which is to set a flexible roadmap that allows a plaintiff to make a minimal, nonburdensome showing that her employer's actions, if left unexplained, were more likely than not the product of discrimination. *See id.* (discussing the light burden of a plaintiff's *prima facie* case). Moreover, it would be illogical to require a showing of identical accommodations because employees who are similar in their ability or inability to work may need different accommodations in order to continue to work, depending on their duties or their physical needs.

The district court's opinion recited the fourth element properly, ROA. 87, p.5, but in applying it, the court erroneously recast the fourth element as requiring Luke "to present evidence that 'light duty' was an accommodation that Defendant afforded to others similar in their ability or inability to work." *Id.*, p.6. (emphasis removed). Compounding the difficulty created by erecting an unnecessarily high hurdle at the *prima facie* stage, the district court's construction of the fourth element was based on its acceptance of the appellee's argument that Luke had

sought only "light duty" as an accommodation. Based on this characterization, which accepted appellee's evidence and rejected Luke's evidence, *see* section II *infra*, the district court found that Luke had failed to present sufficient evidence to satisfy the fourth element. This ruling prematurely terminated the inquiry, precluding the court from considering Luke's evidence showing that appellee's proffered reason for refusing to accommodate her was pretext.

**II. The district court erroneously ignored Luke's evidence, accepted appellee's evidence as true, and drew inferences in appellee's favor when finding that Luke did not establish a *prima facie* case**

The Supreme Court recently reaffirmed the well-established rule that "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). In *Tolan*, the Court reversed affirmance of a grant of summary judgment where a lower court had failed to credit evidence that contradicted some of its key factual conclusions and failed to acknowledge key evidence offered by the party opposing the motion. *See id*. at 1866-68.

Recently, this Court reversed a lower court's grant of summary judgment in a pregnancy discrimination case where it found that genuine issues of fact existed concerning the true reason for the plaintiff's discharge. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016). The Court ruled that the lower court had weighed the credibility of the evidence and had made a determination about it,

neither of which it was permitted to do at the summary judgment stage. The Court stated:

> "By choosing which testimony to credit and which to discard, 'a court improperly 'weighs the evidence' and resolves disputed issues in favor of the moving party." Doing so is tantamount making a credibility determination, and – at this summary judgment stage – a court "may make no credibility determinations." Instead, a court "must disregard all evidence favorable to the moving party that the finder of fact is not *required* to believe."

*Id*. at 245 (quoting *Burton v. Freescale Semiconductor, Inc*., 798 F.3d 222, 236 (5th Cir. 2015) and *Chambers v. Sears Roebuck & Co*., 428 F. App'x 400, 407-408 (5th Cir. 2011); emphasis in original). The Court concluded that the lower court erred in rejecting the plaintiff's statements as self-serving while accepting as true those offered on behalf of the defendant. *Id*.

Here, the district court repeatedly credited, as the basis for its findings, factual evidence cited by appellee and disputed by Luke. ROA. 87. The district court's most important factual findings that are contrary to Luke's evidence are discussed below.

### A. The District Court Ignored or Rejected Luke's Ample Evidence That Appellee Accommodated Others Who Were Similar In Their Ability To Work

To make out a *prima facie* case, all Luke needed to do was to present evidence that appellee accommodated others who were similar in their ability or inability to work. This is not an onerous burden. *Young*, 135 S. Ct. at 1354. Luke

did so, proffering five different categories of evidence. First, Luke presented evidence that the appellee had a *written policy* of providing accommodation to employees. That fact alone is sufficient to satisfy the fourth element of the *prima facie* case. *Young*, 135 S. Ct. at 1344 ("the [Pregnancy Discrimination] Act requires courts to consider the extent to which an employer's *policy* treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work." (emphasis added)); *id*. ("Ultimately the court must determine whether the nature of the employer's *policy* and the way in which it burdens pregnant women shows that the employer has engaged in intentional discrimination" (emphasis added)); *Legg v. Ulster County*, 820 F.3d 68, 74 (2d Cir. 2016) (employer's policy of accommodating employees injured on the job but not pregnant workers was sufficient to make out a *prima facie* case). *Cf.* U.S. Dep't. of Labor, Office of Federal Contract Compliance Programs, *Sex Discrimination Guidelines*, 41 C.F.R. §60-20.5(c)(ii) (a federal contractor discriminates on the basis of pregnancy if it "provides, or is required by its policy . . . to provide, [alternative job assignments, modified duties, or other accommodations] to other employees whose abilities or inabilities to perform their job duties are similarly affected" but does not provide the same to pregnant employees).

Specifically, Luke produced evidence that appellee's employee handbook explicitly stated it would provide reasonable accommodation to employees with

disabilities. ROA. 44-3, §3.2. The district court's opinion does not mention this evidence.

Second, Luke presented testimonial evidence from witnesses that appellee, in practice, accommodated nonpregnant employees who needed help with lifting. For example, Roy Bridges, Chief Operating Officer of Traditions Senior Management, testified that appellee had a practice of transferring employees to available positions that fit within the restrictions imposed by their doctors. ROA. 60-5, p.8. He also testified that CNAs get help with lifting because that is appellee's policy as stated in its handbook. ROA. 44-2, p.14. CNA Yukie Stokes testified that she saw employees receive light duty as the result of an injury. ROA. 86-4, pp.39-40. Luke's supervisor Michael Boligny testified that employees were given lifting assistance from others and that he himself would help lift patients himself if he thought a CNA needed assistance. ROA. 44-2, pp.12, 14 - 16. CNA Lakesha Pye testified that CNAs gave and received help lifting patients, and that she used a lifting device. ROA. 86-3, p.19. The district court opinion does not mention any of this evidence.

Third, appellee's practice of providing accommodation was revealed in its undisputed statements cited by the district court that Luke was placed on leave because "Defendant did not, at the time, have any light duty positions for Plaintiff to fill," ROA. 87 at 2, and later terminated because "'there was still' no light duty for her

to perform." *Id*. (quoting appellee's statement of undisputed facts). These statements indicate both that "light duty" positions were available in the past and it was anticipated that light duty positions would be in the future: the statements were not "we have never offered light duty" or "we have ended our light duty program" or anything of the sort. Indeed, the statements smack of gamesmanship, suggesting an employer who would "turn on" a light duty program when it suited it to do so to accommodate an employee with an on the job injury or a disability, and turn it back off when it wanted to avoid accommodating a pregnant employee. Another of appellee's statements about its light duty program reinforces this idea: "*At that time*, Nottingham did not offer light duty work to any employees, even employees that were injured on the job." ROA. 42-8, p.2, ⁋ 6 (emphasis added). The statement is ambiguous, capable of referring to either a practice or a policy, but nevertheless is an admission that a light duty program existed, had existed, or in the future would exist and that other employees had worked light duty. The district court's opinion does not mention the policy, or the implications of appellee's apparently contradictory claims that it did not *provide* light duty at the time Luke needed it and that it did not *have* any light duty positions available at the time Luke needed one. A finder of fact could reasonably conclude that this evidence supports a finding that appellee provided accommodations to other employees.

Fourth, Luke presented evidence that appellee had accommodated other pregnant CNAs who did not have medical complications related to pregnancy. At the district court's instruction, the parties took discovery regarding whether and how other pregnant CNAs were accommodated and found that two employees, Lakesha Pye and Yukie Stokes, had had their duties modified to limit their lifting during their pregnancies. Pye testified that she received accommodations by means of assistance with lifting during her shifts when she asked for help with patients, as well as being offered help even when she didn't need it. ROA. 86-3, p. 8. She had an uncomplicated pregnancy. *Id*. Stokes testified that she received accommodations during both of her pregnancies. Stokes stated she didn't request any accommodations but that she was given alternate job assignments during her first pregnancy, which included being "taken off the hall" and being assigned to pass out laundry and similar tasks. ROA. 86-4, pp. 36-38. Stokes had an uncomplicated pregnancy. ROA. 84-2, pp.33-34. Stokes also knew a third employee, Kimberly Barron, who was accommodated while pregnant. She testified that if Barron needed to lift a patient who was heavy, her husband (who also worked at the facility) did the heavy lifting for her. ROA 86-4, p. 42.

The PDA's second clause – and the fourth prong of the modified *Young prima facie* case – compares the pregnant worker alleging discrimination to others "not affected" by pregnancy or "related medical conditions." The pregnant

comparators offered by Luke were sufficiently different from her to satisfy this test. None of these CNAs had pregnancy complications as Luke did. ROA. 84, pp. 4, 6, & 7. Despite not having lifting restrictions, these women with non-complicated pregnancies were provided lifting assistance and allowed to continue working. Their experiences stand in marked contrast to the way appellee treated Luke. Human Resources Regional Director Duplantis admitted that she viewed Luke differently from other pregnant CNAs; she made “an assumption” that Luke was going to have a “problem pregnancy” because she was carrying twins. ROA. 44-2, p. 6. Luke offered evidence that appellee accommodated these pregnant employees to show that (1) she was discriminated against based on her *pregnancy complications* and treated differently from other employees who did not have pregnancy-related medical conditions, (2) light duty accommodations were possible and were afforded to CNAs whose pregnancies did not present complications, and (3) appellee did not apply evenly its purported lifting requirement.

In a pregnancy discrimination case where the plaintiff likewise presented evidence of pregnant comparators, the Eighth Circuit found the evidence relevant to similar issues. *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431 (8th Cir. 1987). Deneen was pregnant when she was recalled from layoff, and was briefly placed on bed rest shortly before resuming work. The employer rescinded the recall on the

assumption that she had pregnancy complications that made her unable to work. Her request for light duty was denied, and she was told that she would be rehired only if she could lift 75 pounds as required by her position. She sued for violation of the PDA, claiming that she had been discriminated against because of her complications. She claimed that the 75-pound lifting requirement that was used to exclude her from her job was not consistently applied, and that she had never been able to lift that much even when not pregnant. Part of her evidence was that two pregnant employees who did not have complications were rehired, and that they were given light duty when they later had pregnancy-related lifting restrictions. A jury found in her favor. On appeal, the employer challenged as irrelevant her evidence of how the other pregnant employees were treated. The Eighth Circuit rejected the argument, holding that the pregnant comparators were relevant because the "distinguishing feature is not pregnancy alone but Mrs. Deneen's pregnancy-related complication. . . ." *Id*. at 438. It further found that the accommodation of some pregnant employees and not others was "relevant to resolving the question of whether the employer engaged in intentional discrimination and whether the physical requirement of the position is a bona fide occupational qualification." *Id*. Luke submits that these holdings are instructive and persuasive in the present action.

The district court brushed aside Luke's evidence and reliance on *Deneen*, distinguishing that case because Deneen, "unlike Plaintiff," had not been made aware prior to becoming pregnant that she would have to comply with a lifting requirement. ROA. 87, p .4, fn. 3. This ruling is based on faulty factfinding by the district court. The district court accepted appellee's claim that its CNAs had a lifting requirement that Luke could not meet, despite Luke's evidence disputing the existence of a lifting requirement (*see* section II.B, *infra*), and the absence of a claim or evidence from appellee that it gave Luke a written job description that contained a lifting requirement. (This makes Luke's case even stronger than Deneen's; Deneen's job description did contain a lifting requirement.) Moreover, appellee's policies expressly required CNAs to get help to lift patients and heavy objects, ROA. 44-2, pp.14, 15; 44-3 ¶¶8.2, 8.3, and, similar to *Deneen*, appellee did not consistently require employees to be able to lift heavy amounts as shown by its practice of requiring employees to get assistance with lifting and providing modified work assignments that did not require lifting. Luke submits that the evidence of other pregnant women who did not have pregnancy-related complications but were accommodated with lifting assistance was sufficient to raise a genuine issue of material fact regarding whether appellee discriminated and to cast doubt on appellee's proffered reason for its actions. Moreover, it raised the inference that appellee did not require all CNAs to be able to engage in heavy

lifting, but rather demanded the ability to engage in heavy lifting only from Luke because her pregnancy complications restricted her lifting and appellee could therefore use a lifting requirement to force Luke out of her job. In disregard of the foregoing, the district court appears to have engaged in factfinding by rejecting Luke's evidence and accepting appellee's evidence as true, and also appears to have drawn inferences from the evidence in appellee's favor.

The fifth category of evidence presented by Luke to make out her *prima facie* case was evidence that appellee had provided accommodations to a non-pregnant, "other" employee: Luke herself. Luke testified that prior to becoming pregnant, she had used a mechanical lift, which she described in her deposition as a lift with an anchor that she used to move a patient to his chair because he was too heavy, and that "most of the time" she called in a guy to help her to make sure that the patient wouldn't fall while being moved. ROA. 42-2, pp.24-25. The lifting assistance described by Supervisor Boligny and COO Bridges as being available to all CNAs was also available to Luke. The district court rejected this evidence on the ground that it did not show that appellee afforded accommodation "to others." ROA. 87 at 6. This ruling is erroneous and reads *Young* unduly narrowly; courts regularly compare the treatment of employees before and after pregnancy to ascertain if pregnancy motivated an employer's actions. *See, e.g., Martin v. Canon Bus. Solutions, Inc.*, 2013 U.S. Dist. LEXIS 129008, at *25–26 (D. Colo. 2013)

(plaintiff presented evidence that she received multiple awards as top salesperson but began getting reprimanded only days after she announced her pregnancy); *Hunter v. Mobis Ala., LLC*, 559 F. Supp. 2d 1247 (M.D. Ala. 2008) (evidence showed that employer did not enforce attendance policy until plaintiff became pregnant); *Wilson v. O'Grady-Peyton Int'l (USA), Inc.*, 2008 U.S. Dist. LEXIS 24394, at *27–28 (S.D. Ga. 2008) (employee who alleged she was compensated differently after becoming pregnant could have been a close comparator for herself except for evidence of changed working conditions during the relevant time); *Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 293 (S.D.N.Y. 2005) (plaintiff presented evidence that employer accommodated her before she was pregnant but chose not to do so when she was pregnant).

It can be no different with Luke, who, when she was not pregnant, was an employee not "affected" by pregnancy. Luke's evidence that she was permitted to have assistance with lifting when she was not pregnant, but not when she was restricted from lifting because of pregnancy complications, is strong evidence that appellee accommodated non-pregnant employees in satisfaction of the *prima facie* case and, further, showed that appellee's actions were impermissibly motivated by Luke's pregnancy and complications.

**B. The District Court Erroneously Accepted As True Appellee's Evidence Regarding Lifting Requirements for CNAs and Rejected Appellant's Evidence that Assistance with Lifting Was Available**

The district court accepted appellee's claim that Luke "could not, while pregnant, undertake the lifting required of a CNA." ROA. 87 at 6. This claim was material to the issue of whether Luke could have performed her job with modification of her duties, as she had requested. Luke presented several categories of evidence disputing appellee's claim that there was no accommodation that would allow her to perform the work of a CNA. First, Luke presented evidence that CNAs were not required to be able to lift a particular amount of weight. Appellee was not able to produce any evidence of a CNA job description stating a lifting requirement for Luke, and appellee's employee handbook is silent as to any prerequisite amount of weight its employees would have to be able to lift to obtain or maintain employment with the company. ROA. 48-1. CNA Lakesha Pye testified that she was not asked when she was hired about her size or weight to determine if she could lift patients. ROA. 86-3, p.20.

Second, Luke presented evidence that all CNAs were instructed to have help with lifting. She introduced evidence of policies in the employee handbook directing employees to get help lifting heavy objects, ROA. 44-3, ⁋ 8.2, and not to lift patients by themselves. *Id*., ⁋8.3. She also presented evidence that appellee made available to CNAs various devices to assist with lifting, ROA. 60-2, pp.39-

40, and the testimony of her supervisor that he or others regularly assisted CNAs with lifting. ROA. 44-2, p. 15. She herself testified that she had used a mechanical lift before she was pregnant. ROA. 42-2, pp.24-25. Pye testified that whenever she needed help lifting, she asked for it and she received it. ROA. 86-3, pp.20-21.

The district court appears to have rejected all of this evidence in its determination that Luke was unable to perform the lifting required of a CNA. That finding formed the basis of the district court's apparent conclusion that a designated "light duty position" was the only accommodation that would allow Luke to work, and that no such positions were available. *See* ROA. 87, p. 2 ("The CNA position, by its very nature, requires heavy lifting, and Appellee did not, at the time, have any light duty positions for Plaintiff to fill"); *id*. ("Defendant viewed this [lifting] restriction as a non-starter. Every CNA was regularly required to lift more than 30 pounds, and there was no light duty for Plaintiff to perform,"). The district court cited appellee's evidence in support of its Renewed Motion for Summary Judgment as the basis for these findings, without mention that Luke had produced evidence that disputed the claim.

Later in its opinion, the district court referred briefly to Luke's evidence regarding lifting assistance and mechanical lifts, but rejected the evidence because it erroneously found that in presenting the evidence, Luke relied "exclusively" on the testimony of other pregnant women. ROA. 87, p.7. As set forth above, Luke

relied on the employer's handbook, practice regarding lifting by nonpregnant CNAs, testimony of her supervisor, and her own testimony. Moreover, as discussed in section II.A, *supra*, testimony about the accommodation of pregnant employees was relevant and should not have been disregarded. The district court therefore erred when it refused to consider the evidence. The court improperly drew inferences in favor of appellee in reaching its conclusion that lifting assistance was not available. The disputed facts underlying this question must properly be weighed by a jury.

### C. The District Court Erroneously Rejected Luke's Evidence that She Sought Various Accommodations

The district court erroneously found that Luke had asked for only one type of accommodation: a light duty position. ROA. 87, p. 6 – 7. This finding, which accepted appellee's characterization of the evidence and rejected Luke's, became the basis of the district court's ruling that Luke had not met her *prima facie* case.

Luke's evidence showed that she sought several different types of accommodation, including modification of her duties so she did not have to engage in heavy lifting, like the accommodation her supervisor provided to her on December 3 and 4, 2011. Carcamo admits that Luke asked her if there was any work she could do. ROA. 60-6, pp.44-45. Her supervisor testified that there was ample work for her to do that did not involve lifting. ROA. 45, p.70. She wrote a

letter to appellee requesting accommodation in which she stated that she believed there was sufficient amounts of work she could do with her restriction, and specifically asked that her supervisors be allowed "to make reasonable adjustments to the type of work I am able to perform." ROA. 42-4, p.33. She also requested work that was designated "light duty." *Id*.

The district court acknowledged Luke's claim that she sought accommodation that was broader than a light duty position, including lifting assistance and the use of mechanical lifts, but rejected it because: (1) the court drew the factual conclusion that Luke had not sought these accommodations, and they were therefore irrelevant, as argued by appellee, and (2) Luke provided evidence of use of these accommodations only by pregnant employees. ROA. 87, p.7. The court erred with regard to both reasons. Luke presented evidence that she verbally requested (1) modification of her duties similar to what she initially received on December 3 and 4, 2011, (2) transfer to a position that did not require lifting, discussed in section II.D, *infra*, and (3) the ability to use assistance and mechanical devices to move patients. She also presented evidence that she wrote a letter to appellee that requested modification of her duties or assignment to work that did not require lifting. With regard to the court's second conclusion, Luke also presented evidence that nonpregnant employees regularly had lifting assistance and

used mechanical lifts, and further evidence of appellee's written policy of accommodating employees who had disabilities.

**D. The District Court Erred In Accepting As True Appellee's Claim that No Light Duty Positions Were Available Because It Had Earlier Ruled That Luke Raised a Genuine Issue Of Material Fact With Respect to the Claim**

Luke requested accommodation in the form of a transfer to a position at the nurse's station that did not require lifting (later identified as a "ward clerk" position). ROA. 42-2, p.54. Carcamo testified that CNAs could be transferred to any open position that did not require a medical license. ROA. 60-6, p.50. Other positions that did not require lifting included a position in medical records, and positions as activities assistants. ROA. 60-6, p.50.

Accommodation in the form of such transfers was at issue in appellee's first motion for summary judgment. In denying summary judgment on Luke's claim that appellee had failed to transfer her to a less strenuous position as required by the LEDL, the district court ruled that Luke had raised a genuine issue of material fact as to whether such a position was available and could have been provided at the time she needed it:

> Although Plaintiff's medical restrictions rendered her unqualified for the CNA position, *there remains a genuine dispute of fact as to whether Defendant could have reasonably accommodated Plaintiff in another position*, with light duty work that did not involve lifting over thirty pounds. Plaintiff asserts that after she notified Defendant of her pregnancy and her doctor's orders in December, she was allowed to take light duty work, helping out other employees. Plaintiff

> further asserts that "Nottingham did have positions that did not require lifting over thirty pounds." However, in response, Defendant avers that no vacant positions or positions held by someone with less seniority were available to Plaintiff, and notes that Plaintiff failed to inquire through discovery whether such positions were available during the relevant time period. Defendant further states that Plaintiff's weekend supervisor allowed Plaintiff to perform work that did not involve heavy lifting the weekend after Plaintiff discovered she was pregnant. Carcamo, on behalf of Defendant, acknowledged that Plaintiff had been given light duty on weekends for a short period of time. *There remains a genuine dispute of material fact as to whether reasonable accommodations could have been made for Plaintiff under the LEDL*. Thus, Defendant has not met its burden and summary judgment on this claim is denied.

ROA. 32, p.13 (emphasis added). Appellee presented no new evidence about the availability of such positions in its renewed motion for summary judgment on Luke's PDA failure to accommodate claim, and the district court therefore erred in ruling that summary judgment on the claim was warranted.

**III. The district court erred in ruling that an employer need not discuss with an employee potential accommodations that in response to a request for accommodation**

The district court ruled that Luke sought only one type of accommodation ("light duty"), and her claim was necessarily limited to just that one type of accommodation. ROA. 87, p.7. This ruling was erroneous on the facts, as discussed above, section II.C, *supra*, and on the law: nothing in the PDA or the *Young* decision requires an employee to identify one specific accommodation, and nothing limits the employer's obligation to accommodate to only an accommodation specifically identified by the employee. The ruling, made with no

reference to precedent, defies logic and would set a dangerous precedent if permitted to stand.

A responsible employer responding to an employee's request for accommodation that the employer cannot provide does two things: (1) ask for more information about what the employee can do and what assistance he or she needs, and (2) consider alternative forms of accommodation that would be possible for the employee to do and the employer to provide. Such an approach makes sense because it balances the needs of both parties, and also because it recognizes that each party has information that the other does not (the employee knows what he or she needs, the employer knows what can be provided). It is consistent with judicial requirements in the disability context that employers and employees engage in a discussion about needs and alternatives, *see, e.g.*, *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (requiring employers and employees to engage in an interactive process to determine an appropriate accommodation under the Americans with Disabilities Act), and that encourages employees to engage in internal complaint processes so the employer can have an opportunity to correct the situation. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 806-807 (1998) (imposing consequences if employee who alleges sexual harassment fails to avail herself of the employer's preventative or remedial policies).

Relieving an employer of the duty to communicate with a pregnant employee about what accommodations are available would eviscerate the requirement of *Young* that employers accommodate pregnant employees if they accommodate other employees. It would turn a request for accommodation into a shell game, allowing the employer to reject a particular accommodation request and terminate the requesting employee by claiming that the request was not possible – even if the employer had ten other possible ways to accommodate the employee that it regularly made available to other employees. Gamesmanship of that sort benefits no one.

## PRAYER

WHEREFORE, Appellant Luke prays that the judgment of the district court be reversed and the case remanded for trial, and for such other relief which is just.

Respectfully submitted,

/S/VICTOR JOSEPH WOODS, JR., ESQ.
VICTOR JOSEPH WOODS, JR., ESQ.
ELIZABETH LEBLANC, ESQ.
DICKERSON, LEBLANC & WOODS
3834 New Prosperity Lane, Suite A
Addis, Louisiana 70710
(225) 749-8696
Email: victor@woodslawoffice.com
bleblanc@dlwlegal.com

*Attorney For Plaintiff-Appellant,*
*Eryon Luke*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2017, a true and correct copy of the foregoing Brief for Plaintiff-Appellant were served via electronic filing with the Clerk of Court and all registered ECF users.

Christine S. Keenan
Kullman Firm
4605 Bluebonnet Boulevard
Suite A
Baton Rouge, LA 70809
Direct: 225-906-4250
Email: csk@kullmanlaw.com

Dated: January 30, 2017

/S/VICTOR JOSEPH WOODS, JR., ESQ.
VICTOR JOSEPH WOODS, JR., ESQ.

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word. Excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains 7,475 words.

/S/VICTOR JOSEPH WOODS, JR., ESQ.
VICTOR JOSEPH WOODS, JR., ESQ.